O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| Amber De Jesus Avila, as successor in interest to decedent Juan Avila, et al.,<br><br>    Plaintiff,<br><br>vs.<br><br>ROCKWELL COLLINS,<br><br>    Defendant. | Case No. 8:20-CV-00295-DOC-ADS<br><br>**ORDER DENYING GRANTING IN PART DEFENDANT ROCKWELL COLLINS' MOTION FOR SUMMARY JUDGMENT [71]** |

Before the Court is Rockwell Collins' ("RC" or "Defendant") Motion for Summary Judgment. Motion for Summary Judgment ("Mot.") (Dkt. 71). The Court heard oral argument on this matter on July 14, 2021. After hearing argument and reading the parties' papers, the Court GRANTS IN PART RC's motion.

**I. BACKGROUND**

This wrongful death suit arises out of Mr. Juan Avila's ("Decedent" or "Mr. Avila") death following a workplace accident. Decedent worked as a machinist and operated an industrial sanding machine for PCC Rollment, Inc. On the date of the accident, Mr. Avila was working with the sander when he tragically became entangled in the machine and passed away. Defendant Rockwell Collins previously owned the facility and machine where the accident occurred. Decedent's successors in interest, Amber de Jesus Avila, Susana Cardenas, and V.A.A., (collectively, "Plaintiffs") brought the present suit alleging two theories of products liability: (1) Negligence and (2) Breach of Warranty, and (3) Strict Products Liability.

    A. **FACTS**[1]

        1. **The Incident**

Decedent Juan Avila worked as a machinist at PCC Rollmet in Irvine, CA ("the Rollmet Facility"). G&P's Statement of Uncontroverted Facts ("G&P UF") # 1 (Dkt. 70-1). Specifically, he operated an "OD Sander." *Id.* The OD Sander consists of a lathe, a chuck, and a 90-inch belt grinder and is used to sand and polish metal.[2] Plaintiff's Statement of Uncontroverted Facts in Response to RC's Motion ("PUF") # 4 (Dkt. 75-1). Among other responsibilities, the machinist operating the OD Sander must change the belt on the belt

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

[2] A lathe is a tool that rotates the workpiece about an axis of rotation to perform various operations, like cutting or sanding. A chuck holds the rotating workpiece. An abrasive belt grinder is an abrasive surface that travels back and forth against the workpiece. When combined, the three pieces work in tandem: held in place by the chuck, the lathe rotates the workpiece against the moving abrasive belt grinder to polish or sand the workpiece.

grinder between 20-40 times per day. *Id.* # 8. To change the belt, the machinist must move the belt grinder near the power transmission chuck and lean across the top of the pipe that is being polished. *Id.* #9.

On December 1, 2017, Mr. Avila was operating the OD Sander to sand and polish a 19-foot-long pipe that had a diameter of 12 inches. *Id.* # 12. He stopped the belt grinder in order to change the belt. *Id.* The belt grinder was positioned to the left end of the lathe and was in a raised position and powered off, but the shaft, chuck, and pipe continued to rotate. *Id.* # 13-14. Mr. Avila opened the guard on the grinder, moved the wheel inward to increase slack on the sanding belt, and removed the belt. *Id.* # 15. As Mr. Avila asserted a new abrasive belt on the grinder, Mr. Avila's clothing became caught in the rotating chuck. *Id.* # 16. This caused Mr. Avila to be wrapped around the chuck, and he sustained multiple blunt force injuries. *Id.* He was pronounced dead at the scene. *Id.* # 17. Hereinafter, the events leading to Mr. Avila's death will be caused "the Incident."

### 2. Defendant Rockwell Collins' Connection to the OD Sander

In December 2000, Defendant Rockwell Collins acquired the Rollmet Facility—including the OD Sander—as part of its acquisition of K Systems, Inc. Rockwell Collins' Statement of Undisputed Facts ("RCUF") # 1-2 (Dkt. 71-2). In 2007, RC's operation manager Richard Rothas ordered the subject G&P Machinery B-490-7 abrasive belt grinder. PUF #25. RC employees unbolted the old grinder and reattached the new subject grinder to the old grinder mount. PUF # 27-30.

On June 20, 2011, RC sold the Rollmet facility and its contents—including the OD Sander—to Rollmet, Inc. *Id.* # 3. Between 2000 and 2011, RC never put the OD Sander individually on the market for sale. After the 2011 sale to Rollmet, RC did not have the right to test, inspect, operate, or maintain the OD Sander. *Id.* # 5.

### B. Procedural History

On July 27, 2020, Plaintiffs filed their First Amended Complaint ("FAC") with this Court. (Dkt. 27). The FAC advanced three products liability theories against RC: (1)

Negligence, (2) Breach of Warranty, and (3) Strict Products Liability. *See generally* FAC. On December 23, 2020, the parties jointly stipulated to dismiss the strict products liability claim. *See* Order Granting Stipulation (Dkt. 40). On June 17, 2021, RC moved for summary judgment on Plaintiff's Negligence and Breach of Warranty Causes of Action. *See generally* Mot. Plaintiffs filed their opposition ("opp'n") on June 21, 2021. (Dkt. 75). RC replied on June 28, 2021. Reply ISO Motion for Summary Judgment ("Reply") (Dkt. 77).

**II. LEGAL STANDARD**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried before a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the

moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**III. DISCUSSION**

"Products liability is the name currently given to the area of the law involving the liability of those who supply goods or products for the use of others to purchasers, users, and bystanders for losses of various kinds resulting from so-called defects in those products." Prosser & Keeton, Torts (5th ed. 1984) § 95, p. 677. California courts recognize three "possible theories of recovery" for products liability suits: "(1) Strict liability in tort, (2) negligence (i.e., in creating or failing to discover a flaw, in failing to warn or failing to adequately warn, or in the sale of a defectively designed product), and (3) breach of warranty (express and implied)." *Khan v. Shiley Inc.*, 217 Cal. App. 3d 848, 855 (1990) (enumeration added). RC's motion concerns the second two theories of products liability, negligence and breach of warranty. The Court analyzes each theory in turn.

### A. Negligence

To prevail on a negligence claim, plaintiff must show that defendant owed plaintiff a legal duty, breached that duty, and that the breach was a proximate or legal cause of plaintiff's injury. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001). RC moves for summary judgment based on the argument it, a mere prior owner of a piece of used equipment who was never in the business of selling OD Sanders, owed no legal duty to the decedent. *See generally* Mot. In other words, RC argues that, even if it failed to use ordinary care in building and maintaining the OD Sander, its attenuated relationship with the OD Sander should preclude liability for Mr. Avila's death caused by the OD Sander. "The existence of duty is a pure question of law" that is often adjudicated before trial. *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 363 (2012).

### 1. Presumption in Favor of Existence of Duty

"Duty is not an immutable fact of nature but only an expression of the sum total of those *considerations of policy* which lead the law to say that the particular plaintiff is entitled to protection." *Parsons v. Crown Disposal Co.*, 15 Cal. 4th 456, 472 (1997) (citations and quotations omitted) (emphasis in original). The California legislature has created a strong presumption in favor of duty: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill or skill in the management of his or her property or persons." Cal. Civ. Code § 1714(a); *see also Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011) (calling the presumption of duty a "general rule in California"). California courts do not make an exception to this general presumption of duty unless the departure is "clearly supported by public policy." *Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968).

To determine whether policy considerations support a finding of no duty, courts balance seven factors:

> "The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."

*Id.* at 113.

With this presumption, the Court turns to whether the *Rowland* policy factors justify "a departure from [the] fundamental principle" that RC owed a duty to Decedent. *Id.* at 112.

### 2. Balancing the *Rowland* Factors

#### a. The First, Third, and Fourth Factors

California courts generally analyze the first, third, and fourth *Rowland* public policy factors together. *Cabral*, 51 Cal. 4th at 774. With respect to these three factors, RC relies heavily on *Garcia v. Becker Bros.*, 194 Cal. App. 4th 474 (2011). *See generally* Mot. In *Garcia*, the plaintiff suffered a workplace injury while using "slitter line machinery" in a steel mill. 194 Cal. App. 4th at 480. The defendant purchased the slitter line in 1973 and sold the slitter line 26 years later to another company. *Id.* at 477. When that company ceased operations, the bank repossessed the slitter line and it was then bought by the plaintiff's employer. *Id.* After plaintiff's injury, he sued on a negligence products liability theory, and the defendant moved for summary judgment arguing that defendant did not owe plaintiff a duty. *Id.* The court found there was no duty because the first, third, and fourth *Rowland* factors weighed strongly against imposing a duty. *Id.* at 485-86. In particular, the court noted how many times the slitter line passed hands before it injured the plaintiff: "As a matter of law, Becker Brothers owed Garcia no duty of care as a subsequent user of the slitter machinery manufactured by Cincinnati Incorporated, sold to Columbia Steel, repossessed by the bank, and ultimately purchased by [Garcia's] employer." *Id.* at 487. The court reasoned imposing liability on a defendant so far removed from the plaintiff's injury would not further tort law's goals of deterrence and "imposing the costs of negligent conduct upon those responsible." *Id.* at 486-87.

Despite the fact RC directly sold the OD Sander to Decedent's employer, RC argues *Garcia*'s logic still holds, and this Court, like the *Garcia* court, should not impose a duty. *See generally* Mot. The Court disagrees. RC's relationship with the OD Sander is much less attenuated than the *Garcia* defendant's relationship with the slitter line machine because RC sold the OD Sander directly to the Decedent's employer. This means RC could better foresee the possibility of harm to the Decedent, its connection to the Decedent's injury was much closer, and RC bears more moral responsibility for Decedent's injury than did the defendant in

*Garcia*. Moreover, unlike in *Garcia*, imposing a duty on RC would further tort law's goals of deterrence and efficiently distributing costs. The arm's length relationship RC had with the OD Sander means it could have more easily prevented the injury than could the defendant in *Garcia*. Second, and related to RC's moral blame, imposing a duty would align with the principle of imposing liability on those who had some responsibility for Mr. Avila's death.

### b. The Second Factor

The second factor is the degree of certainty of harm to the plaintiff. *Rowland*, 69 Cal. 2d at 113. Here, it is undisputed the Decedent suffered a significant injury.

### c. The Fifth Factor

The fifth *Rowland* factor is the policy of preventing future harm. *Id.* As discussed above, RC—the company that assembled and sold the OD Sander—could have avoided the injury with minimal cost by, for example, placing a guard on the chuck of the lathe. *Nat'l Union Fire Ins. of Pittsburgh v. Riggs Nat'l. Bank of Washington D.C.*, 5 F.3d 554, 557 (D.C. Cir. 1993) (Silberman, J., concurring) ("Placing liability with the least-cost avoider increases the incentive for that party to adopt preventive measures" that will "have the greatest marginal effect of preventing the loss."); *Air and Liquid Systems Corp. v. DeVries*, 139 S.Ct. 986, 997 (2019) (Gorsuch, J., dissenting) ("The manufacturer of a product is in the best position to understand and warn users about its risks; in the language of law and economics, those who make products are generally least-cost avoiders of their risks. By placing the duty . . . on a product's manufacturer, we force it to internalize the full cost of any injuries caused.").

### d. The Sixth Factor

The sixth factor is the consequences to the community of imposing a duty. *Rowland*, 69 Cal. 2d at 113. At oral argument, Defendant argued that, since it transferred the OD Sander to Decedent's employer as part of an acquisition by Decedent's employer, imposing a duty would chill mergers and acquisitions. Defendant is likely correct that imposing liability may, on the margin, increase uncertainty and costs related to mergers and acquisition. However, Defendant

has pointed to no case where fear of chilling mergers and acquisitions was enough to neutralize California's strong public policy preference in favor of imposing duties on those who built a product that injured an individual. Moreover, the decision to merge with or acquire another business is influenced by numerous factors and the Court is skeptical that fear of future negligence liability would ever be a but-for cause of two companies deciding not to merge or one company deciding they did not want to acquire another. Finally, employees have an interest in gaining redress for harms suffered, so these employees and the larger community benefits when a duty is imposed.

### e. The Seventh Factor

In their moving papers, RC did not address the seventh *Rowland* factor, which is the cost and prevalence of insurance. Based on this lack of argument, the Court finds this is a neutral factor.

### 3. There Exists a Duty

Based on the above, none of the *Rowland* factors are so compelling to overcome the clear policy preference in California that "everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill or skill in the management of his or her property or persons." Cal. Civ. Code § 1714(a). That RC holds itself out as a mere "occasional seller" of OD Sanders does not change this because they could have cheaply avoided the Decedent's injury by attaching a guard to the lathe. Indeed, it was fortuitous that it was not one of RC's employees who were injured by the OD Sander. If it was one of RC's employees who was injured, the duty question would be an easy one. In this situation, then, it is both fair and efficient to impose a duty, because a plaintiff's right to redress should not turn on who employed them when they were injured. Accordingly, the Court DENIES RC's Motion for Summary Judgment with Respect to Plaintiff's Negligence Claim.

### B. Breach of Warranty

Defendant also moves for summary judgment on Plaintiff's breach of warranty claim. The Court **GRANTS** Defendant's Motion because Plaintiff's cause of action is barred by the statute of limitations.

In 1963, California largely adopted the Uniform Commercial Code ("UCC"). *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 247 (2007). UCC § 2-725 (1) provides that "an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." A cause of action "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." UCC § 2-725(2). Here, Plaintiff's breach claim is one for breach of implied warranty of merchantability. Thus, the alleged breach occurred when RC sold the OD Sander to Decedent's employer in 2011 because that is when RC allegedly warranted merchantability. Thus, RC cannot be held liable for any breach of warranty claim that occurred after 2015, which is two years before Mr. Avila's death.

The Court therefore **GRANTS** Defendant's summary judgment with respect to the breach of warranty claim because the cause of action is barred by the statute of limitations.

## IV. DISPOSITION

Based on the foregoing, the Court **GRANTS IN PART** Defendant's Motion for Summary Judgment. In particular, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's Breach of Warranty Claim and **DENIES** Defendant's Motion for Summary Judgment with respect to Plaintiff's Negligence Claim.

DATED: July 19, 2021

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE